Board of Managers of the Prairie District Homes Tower Residences Condominium Association v. Leopardo Companies Would the attorneys who are making a presentation this morning please step forward to the podium and identify your names, the record, and who you're representing. Good morning, Your Honors. Michael Kim on behalf of the Prairie District Homes Tower Residences Condominium Association appellate. Good morning, Your Honors. John Marobic, M-R-O-W-I-E-C. On behalf of Leopardo Companies, Inc., the appellate and cross appellate. Okay. We have allotted 30 minutes time for this case, and that time will be equally divided. If the appellate wishes to reserve time for rebuttal, he may do so. It is our goal to finish within that 30 minutes. We have to go a little bit over to make sure the parties are fully able to explain their position. We'll do that, but we also have to keep in mind we have people waiting for the next case. So with that, you may proceed. Good morning, Your Honors. With regard to the issue that I would like to focus on in our presentation, first with regard to the statute of limitations, which is the basis for Leopardo's 2619 motion, which was granted by the trial court, finding that the statute of limitations had expired prior to the bringing of the claim against Leopardo in the Fourth Amendment complaint filed by the association. This is a rather unusual situation, because when we look at the statute of limitations and the company's statute of repose, we need to keep our focus on the fundamental principles that apply. Certain fundamental principles include not having claims become stale, including the loss of evidence, opportunities for either a proper prosecution or defense of a claim. At the same time, it should allow a reasonable time for a diligent party to bring its claim against another. But didn't you know on April 27th when the developer filed its claim against the construction agent or manager that you had knowledge then? Well, Justice Taylor, with regard to knowledge, we knew of the existence of a particular party, in this case Leopardo. However, the problem is that Leopardo was identified throughout the history, most of the history of this case, as a construction manager, as advisor, not constructor. So who was the constructor? Well, at the outset, it appears to be the developer arguably acted as its own general contractor when it let out the contracts with the prime trades being Hanson & Hampbell. So why do they need a manager if they're the constructor? Well, I guess that's within the discretion of the owner who may be acting as his own general. Having a construction manager may be of some assistance. We're talking about a situation where we're not sure exactly how the owner, in this case the developer, really looked at Leopardo, even though the contract that was signed says on its face construction manager as advisor, not as constructor. If I may follow up on that point, the curiosity about this case is that it's pretty clear that in Illinois there has been no cause of action recognized against the construction manager as advisor. There has been some cases that suggested that, particularly the Minton case, Minton v. Richards group, that if you have an insolvent general contractor, the aggrieved homeowner can sue the responsible subcontractor even in the absence of privity. We have not seen the case where that concept was expanded to an insolvent developer who had a general contractor who was insolvent. So in looking at the claim that could have been brought and was indeed ultimately asserted against Leopardo, it's not a claim against Leopardo as construction manager, not constructor, or construction manager as advisor, but rather it would have to be a claim arguing that Minton should be an insolvent owner developer. That's one approach. However, this case is made more curious, if you will, by the fact that the court, this court, determined in builder or non-vendor general contractor could be directly sued by an aggrieved homeowner under the implied warranty of habitability. It should be noted that that case was decided within a couple weeks after the Fourth Amendment complaint had been filed, arguing on the basis of Minton, but obviously providing an alternative basis for proceeding against Leopardo. All right, but if you had the implied warranty of habitability and you knew that the defendant was part of that and you didn't have to have him insolvent, you could have still sued him in 2007. I don't think we could, Your Honor, because there was no basis for suing a construction manager as advisor. He merely advises the owner, recommends the owner, and therefore he doesn't, quote unquote, control the project per se. He doesn't run the project per se. He basically serves as an advisor and representative of the owner. In this case, the owner being the developer could have been wearing the hat as acting as their own GC or general contractor. So that's why I say this is a complicated situation because the insolvency was with the developer, but at that point in time didn't necessarily allow us to proceed against a person who at that point was only known as a construction manager. There was information available to you at the time that you filed the lawsuit, wasn't there, that Leopardo was the general contractor. It was in the city's records. Well, the city's records, if you will, comprised of an application for a building permit and a building permit that was issued. Frankly, in terms of fulfilling our responsibilities to act with due diligence in accordance with Rule 137, that we not bring a claim unless there's a good faith basis for that claim. It was not until after the deposition of J.P. Sanovitis, who was actually on the property at the time, who testified that in this project, Leopardo had acted as a general contractor. But again, going back long before that deposition, the application for permit and the permit itself designated Leopardo as a general contractor would seem to me that would be part of ordinary due diligence if you're bringing a construction lawsuit with regard to a project, that the first thing you do is pull the permit. And isn't the burden here what you knew or what you should have known within the exercise of due diligence? All you had to do was file a Freedom of Information Act request at the time that you filed the first complaint, and you would have known right then and there that Leopardo, somebody designated Leopardo as a general contractor. Well, granted, Your Honor, yes, that information was available in the city records. You only have literally two pieces of paper among literally thousands of pieces of paper in the case. And whether or not those two pieces of paper alone should have or does constitute an appropriate basis for naming Leopardo as a general contractor, when in fact, in 2007, the developer filed its third-party complaint against Leopardo and the two trade contractors, didn't refer to Leopardo as a general contractor, but relied upon its contract for construction manager, not constructor. So to be diligent about the situation, we really needed to develop the evidence more than just two pieces of paper with the city that we hypothetically certainly could have gotten with an FOIA request. But those two pieces of paper alone, I don't think would satisfy our obligation to be sure we had a credible case alleging the general contractor status of Leopardo. You depend heavily on the Mitzias v. Iflow case, and that's the case where Justice Gordon found that although the statute had run where you had an unknowable type of party, a party who was liable, it was unknowable prior to that time that that party could have been liable. And that had to do with a pump for anesthetics. And during the deposition, there was a statement by one of the experts that it was unknowable for the party to know that this company could have been responsible. I'm sure that your opponent in a few minutes is going to stand up and say that here this case is different than Mitzias because where in Mitzias it was unknowable that the manufacturer of the pump could have been liable. Here it was within the realm of possibility for you to know that Leopardo could have been My answer, Your Honor, would be that in approaching Leopardo's responsibility in this case, we have two alternative theories. One theory would be an argument that Minton should be expanded to include a general contractor when the developer is insolvent. Okay? Whereas Minton itself was insolvent The second alternative we have, which is kin somewhat by analogy to Mitzias, is that in all the other cases cited by Leopardo, those parties who were overlooked or not discovered until later could have been sued originally in their capacities on the basis of their conduct in the original situation. Here the alternative theory is that based upon the 1324 Pratt case, which for the first time said that an association could sue a non-vendor builder without any reference to insolvency, non-vendor builder on the implied warranty of habitability provided us with another at previously for lack of a better term, unrecognized claim. And so by analogy, it's not exactly the same as Mitzias, but I think it's close to Mitzias in the concept being it would be unfair to have the statute begin to run before the association could have brought its claim either under an argued expansion of Minton or more Our argument is basically that under the Minton expansion approach, there was due diligence if you count the numbers of days based upon the Leopardo analysis that the 2006 date is the reference point of the start. Granted, counting the number of days, it's 45 days later than the strict deadline. Bearing in mind that if you look at the discovery that was taken in terms of getting the documents, in terms of taking Mr. Sanobides' deposition and ultimately filing the fourth amended complaint, those occurred within a matter of literally one month after another. So the case moved fairly quickly once the discovery was had. But again, that's looking at the Minton approach as a basis. If you look at the 1324 Pratt basis, an alternative basis for pursuing Leopardo, that case was decided even after the 14th, I assume the fourth amended complaint was filed. And we should have been allowed a reasonable amount of time based upon that case to bring a claim against Leopardo. In this case, we somewhat preceded the filing of that case. Once you have knowledge of insolvency, what is the limitation on a new party that has not previously been named? Well, a new party who could not have been named as opposed to a new party who could have been named. A new party who could not have been named, for example, a non-vendor builder under 1324 Pratt. We should be entitled to at least, my view, is at least four years from at least the decision that the court made in 1324 Pratt. And this case was filed even before that decision came. What about the, I believe, concern about your splitting the claims? Since you already have a judgment against the developer for breach of contract, now you're going for the implied warranty of havability against Leonardo. This is true. We have a judgment against the developer. And the general principle is that we as plaintiffs should not be allowed to double recover or recover in excess of our damages. That doesn't preclude us from seeking other responsible parties based upon other theories that are applicable to those parties. I'd like to reserve some time for rebuttal if I'm running out at this point. Yes. Thank you. May it please the Court. John Marovic on behalf of Leopardo. The question that the Board refuses to face is, under whatever theory that we're going to pursue, why didn't they take a deposition in five years? They say that they can't rely on the building permit for their theory. They can't rely on the application. They had to do their due diligence under Rule 137. What did they do? They went to final judgment against the developer. What did they do years earlier? They sued the parties under the Minton theory who built the windows and who built the masonry. They knew that the developer was insolvent and that the costs of repair were likely to be $8 million. When did they learn about the insolvency of the developer? Pardon? When did they learn about the insolvency? Well, they received their own expert report in September of 2005 from Lis Janney saying that the repair costs could be $8 million. They filed their complaint November of 2005, the original complaint, and in it they said that the developer had not properly reserved in the expenses or for the cost of repair. So already in the time of the complaint in November 2005, they knew they had a money problem. But the developer had $4 million at that point, didn't he? May have. May have. May have had $4 million. According to their allegations in the Fourth Amendment complaint, the developer distributed $4 million between 2003 and 2006, of which $500,000 was distributed in 2003, so there was nothing the board could have done about that. In their First Amendment complaint in July of 2006, they say in a major quote that the developer is insolvent and that the developer's occasions. And what did they do about that? They added as defendants the members of the Limited Liability Company, who is the developer, and members of the member, because it was an LLC at the first level, LLC at the second level, and a number of John Doe's saying that, and raising accounts saying that any distributions to those people should be given back. So certainly no later than July 2006, they knew this developer was insolvent. When the developer sued Leopardo, the developer also sued for indemnity from the two trade contractors, the window contractor and the masonry contractor. And one month later after the developer did that, what did the board do? The board sued the window contractor and the mason, but not Leopardo. Even though you keep arguing that you're an advisor, construction advisor, then why did you let the building department put you down as construction manager? That's their form. You mean as general contractor? As general contractor. The building application, if you look at it, is a form, a pre-printed form. It doesn't provide anything other than general contractor. And that application is dated in advance of the contract. It's not uncommon. In fact, Turner Construction, working in this town for years, always used CMA as their methodology. The developer chooses how they want to go about things. Obviously a general contractor makes a little more money usually than a CMA agent because they take a bigger risk. They're responsible for all the subcontractors. They're responsible to build that building for whatever it is, $40 million, whatever the cost was. The CMA agent is very different. I wanted to be certain that the court understood that the argument that the board is making regarding what I'll call a change in law in quotes, I don't know that it was a change in law, but the Pratt decision that they referenced, we a part of brought that decision to the trial court's attention in our motion to dismiss. Notwithstanding that, the board never argued that the reason the court should excuse the delay was because of this new case. You won't find it. They didn't even argue it in their opening brief in this case that that was their argument. That's why we, in our response in support of our cross appeal, we had to put a section in there to say where did this argument come from. It wasn't argued in the trial court. It wasn't argued in their first brief. There's no citation of authority that there's some kind of exception to the statute of limitations for some notion of a new case law. They've never done it. Yet today, it's the hallmark of their argument. The courts have been very clear that they're not implying exceptions to statute of limitations. And there's no case cited to you that there's somehow a change in law exception to the statute of limitations. This really goes back to diligence. And it really goes back to how do you run a construction case involving $8 million and you don't take a deposition of the construction manager, whether you thought they were the general contractor or just the construction manager. You don't even take their deposition in five years. You don't take a deposition of the developer's field personnel in five years. When you finally do take a deposition of the field personnel, of the developer, you find out, if you look at the transcript, he wasn't even there when the windows and masonry were installed. I don't know how the court can countenance that kind of delay. The plaintiffs allege that they can make a case that Leopardo concealed the true nature of their relationship here, and they want leave to amend the complaint if we see the statute of limitations issue the way it stood with the trial court. There was no allegation in the trial court of concealment. And the case was very clear. They can proceed for fraudulent concealment of the cause of action, but they have to make the allegations in the trial court. They never did. They never asked to amend. They never, if they had asked to amend, they have to plead specific things that Leopardo did to conceal, representations to them that concealed this true identity of Leopardo. None of that is present in the record. The appellants seem to split their argument into two prongs. The second prong was this argument concerning the Pratt case. What comment do you have with regard to their first prong, the idea that even when they found out in 06 that there was an insolvency, that under the case law that they would be imposed upon them the burden of trying to expand the law at that time to the general contractor? Well, they didn't seem to have any problem with applying the Minton exception to the masonry contractor or the window contractor. Even though they were not vendors. And they have no problem applying it to Leopardo years later. Their argument on insolvency just is we didn't know that Minton allowed an action against Leopardo. I don't know whether Minton allows an action against Leopardo or not. But that's the theory they chose when they finally got around to it. And there was no intervening cause that would make them all of a sudden wake up and say, well, here's a new theory. As opposed to back then when they said, well, you put... No, Minton never changed. The Minton rule of you can go around the rule of privity because of the insolvency of the developer never changed. And in fact, in Pratt 2 that just came out recently, they said, well, Minton's good law. The party was arguing in Pratt 2 that Pratt 1 meant that somehow you couldn't follow Minton anymore. And the court said, no. No, Minton's fine. We didn't say anything about Minton in Pratt 1 other than to cite it. So nothing's changed. They've relied on Minton since day one. So would it be your position that at least back until, well, as the trial judge said, at least back to July of 2006, they were on notice of the insolvency. And that's not even to say that they couldn't have found out about the insolvency before that. Well, we say, based on the allegations of the Fourth Amendment complaint, which go all the way back to some of the same allegations of the first original complaint, that they knew about it all along. But if you want to give them the benefit of the doubt, they came straight out and used the word insolvent in the July 2006 amended complaint. And they added a whole bunch of defendants to say, well, we want the money from those guys. So, I mean, they certainly knew that the developer didn't have the money anymore. We have some other arguments, but time is passing, and we'll rely on it briefly. Thank you. Thank you. Mr. Kuhn. Your Honors, briefly in response to the presentation by Leopardo, one of the things that becomes very apparent when you hear the back and forth between the parties is was there diligence, why couldn't something be done, should it have been done, et cetera. These are, frankly, questions of fact, to be determined best by the trier of fact as to whether or not, as Leopardo contends, there could have been more diligence, or as the situation is looked at in the context of the case itself, whether or not what was done was appropriate. In fact, even Leopardo has just mentioned that these forms filed with the city, for lack of a better term, were somewhat forms, per se, that could have and maybe should have had a line designating a construction manager as opposed to a general contractor. So they're brushing that off, saying it's not an admission that we're a general contractor. Under that state of affairs, then I think we really don't have a, quote, ironclad basis of looking at two city forms and saying that's determined, which is why the deposition on Mr. Sanovitis was taken. With regard to concealment, we're not necessarily arguing concealment, but we are arguing misstatement, which is another basis for relief from an otherwise harsh application of the statute of limitations. The misstatement is the fact that the contract says construction manager, not as constructor, but as advisor, as they say. So there's a mistake. Not necessarily, we don't have, at this point, perhaps the basis for arguing true fraud, fraudulent concealment, but we certainly have misstatement. And that is something which, apart from the basic factual inquiry as whether or not there was diligence or not, that should not have been decided on a summarily fashion by the trial court in granting the 2619 motion. With regard to the insolvency issue, it is correct that in 2006 the association alleged the insolvency of the developer as part of its attempt to see recovery from members of the developer LLC. It should be noted that in the depositions taken with regard to that, the developer disputed insolvency and argued that there were assets, there were performance bonds, among other things that he claimed were available to satisfy the claims of the parties. It was not until 2008, when after a thorough forensic analysis was done by the association's accounting expert, looking at all the tax returns, the financial documents that were made available through discovery of the defendant developer, that a conclusion was made that, indeed, the developer was insolvent. Why did it take three years to do that? Well, Your Honor, part of it is if you, well, the problem is that we had a number of documents. There were extensive motions back and forth with regard to motions that were dismissed by the developer in the claims brought against the developer and its members on a personal basis. But then when you found out in 2008, you still had another year in which to go against the construction advisor or manager. You still had time to file that to stay within the statute. However, Your Honor, the problem there, as I said, this is a curious case. There is no case in Illinois that says you can go after a construction manager as construction manager. We had to get that other piece of the puzzle, which is, could he be fairly characterized as a general contractor despite his own characterization as a CF? So we're caught in a very unusual situation. If he was a trade contractor like the masonry contractor, like the window contractor, you could say, well, you know, they touch the bricks and mortar. They're out there doing the work. The developer could be characterized as an owner acting as his own GC. And so Minton is very applicable there. But you have a construction manager. Frankly, I don't know of any case that says a construction manager as advisor can be brought in under a Minton concept. The only other point that I would make, Your Honor, is that with regard to the Pratt case, I'm not going to dispute who brought it up first in the trial court level, but I will say that Pratt and the theory that Pratt created a new cause of actions is announced by the court that the limitations period is extended. Despite our research, Your Honor, I can't say that we've come up with that definitive point. However, we do believe that if you look at the principles that are at play with regard to statute of limitations, I think you realize that if there is a reasonably diligent response, and most importantly, we are still within the 10-year statute of repose, which is the absolute bar that the statute has that says it's too bad because you're too late. That is the absolute bar. Otherwise, if you look at the Mitsias case, you're taking a statute of limitations four years based upon some other concept, whether insolvency or otherwise, and you're making that a statute of repose. And that would not be fair. Thank you. Thank you, Your Honor. I have one last question. Sorry. What are the odds that you would quote me as a trial judge and that I would sit here on the appellate court having to review my own offer? Not very high. Right. I would advise lotto tickets for you today. Thank you, Your Honor. All right. Thank you. This matter will be taken under advisement. The case is well briefed and well documented. Thank you very much.